Goodridge *et al.* v. Union Pac. Ry. Co. *et al.*

(*Circuit Court, D. Colorado.* January 9, 1889.)

1. Carriers—Of Goods—Discrimination—Consideration.

To a complaint by dealers in coal against a railroad company for discrimination in allowing freight rates to a rival coal company lower than schedule rates, defendant alleged that defendant had become liable to the favored company for trespass on its mines; that defendant had given up the working of certain coal mines, and had procured the favored company to take said mines off defendant's hands; and in order to procure the coal needed for defendant's consumption, and to settle the claim for trespass, and to get rid of the operation of the mines, defendant entered into a contract by which the favored company was to supply all defendant's coal at a low figure, and defendant was to carry said company's coal at a low figure; and that by reason of said facts it was believed when said contract was made that the amount to be paid by said favored company would be equal to the schedule rates. *Held*, that the answer set up considerations received by defendant from the favored company, for which less rates were given to the latter, on which no estimate could be made to ascertain the amount of the charge, and such answer was insufficient.

2. SAME.

Where plaintiffs and the favored company are both dealers in coal in the same market, the direct effect of a reduced rate to the favored company is to reduce the plaintiffs' profits to the extent of such reduction, making an unjust or undue discrimination within the meaning of Const. Colo. art. 15, § 6.

3. PLEADING—GENERAL DENIAL.

A general denial of all material allegations in the complaint is authorized by Code Colo. 1887.

At Law.   On demurrer to answer.

Action by Henry Goodridge and another against the Union Pacific Railway Company and others for discrimination in freight rates.   The first count in the complaint was for a penalty; the second, for unlawful discrimination and to recover overcharges; the third, for money had and received to plaintiff's use.

*Sampson & Millett,* for plaintiffs.

*Teller & Orahood,* for defendants.

HALLETT, J.   In the second defense the discrimination of which plaintiffs complain is justified on the ground that defendant has become liable to the Marshall Consolidated Coal Mining Company (the favored company) in respect to a claim for damages against the Denver, Western & Pacific Railway Company for a trespass committed on the lands now owned by the Marshall Company, in building the road on and across such lands.   It is alleged that the Denver & Western Company broke into the mine and set fire to it, from which great damage resulted to the owners of the property.   This claim for damages has been acquired by the Marshall Company, and may be enforced against the road, built by the Denver, Western & Pacific Company, now owned by defendant.   The amount of the claim, and the extent to which it became the consideration of the contract with the Marshall Company to carry for that company at a less rate than for others, is not shown.   It is also alleged in this defense that before the time of making the contract with the Marshall Company for giving to that company less rates than to others, and in the year 1878, the defendant made a contract with the Union Coal Company, the details of which need not be stated.   But defendant in the year 1885 was convinced that it would be expedient and necessary to cancel the contract with the Union Coal Company, and make the contract with the Marshall Company, which is set out in the answer.   On that point the answer reads as follows:

"That at said date, on account of the complaints that had theretofore been made by the owners of the Marshall Coal Mining Company, and the owners of other mines in Boulder county, this defendant concluded that it was for the best interest of the said Union Pacific Railway Company to discontinue its connections with the said Union Coal Company, and to discontinue the actual working of any mines through said company; that thereupon and for that purpose, it entered into negotiations with the said Marshall Consolidated Coal Mining Company for the purpose of procuring the said company to take off its hands, or off the hands of the Union Coal Company, controlled and operated by it, the said mines as above stated, and that it was further induced to make said contract from the fact that the former owners of the Marshall coal mine

had always been complaining of the rates, and giving to the defendant great trouble and annoyance in respect to said complaints about said rates. That it was further induced to enter into said contract for the reason that said Marshall Consolidated Coal Mining Company had succeeded to the rights of the former owners of the Marshall coal mine, together with the right to demand from the Denver, Western and Pacific Railway Company, or its assignees, damages as were claimed at that time; the said lands of the Denver, Western and Pacific having already at that time been conveyed to the Denver, Marshall and Boulder Railway Company, subject to said claim; and therefore, for the purpose both of getting rid of the operation of said mines formerly operated by the Union Coal Company, and for the purpose of providing this defendant with some source upon which it could rely for the coal needed by it for consumption on its locomotives, and for the further purpose of settling the said claim so made by the former owners of the said Marshall Coal Mining Company and assigned to the Marshall Consolidated Coal Mining Company, it made and entered into an agreement, in words and figures following, to-wit."

And in the contract with the Marshall Company the prior agreement with the Union Coal Company, and the desire of the parties to discontinue business under it referred to, is included in the terms of the contract; and the Marshall Company agrees to furnish coal at the mine for defendants' use at the cost of mining and loading on cars, not to exceed $1.25 per ton, and to have all its coal carried on defendants' lines, so far as they may extend. Defendant agrees to carry the coal for one dollar per ton, "unless two hundred thousand tons shall be mined and furnished for transportation * * * yearly, in which case a rate of sixty cents per ton shall be given for all coal transported." If coal is ordered by defendant "for commercial uses," it shall be furnished at the cost of mining and delivery on board cars, with 50 cents per ton added. And if within two years from the date of the contract the Marshall Company shall desire to sell its capital stock, defendant shall have the right to buy "in preference to any other purchaser." The contract is to remain in force five years. Further on, and concluding, the answer reads as follows:

"This defendant further says that the sole and only variation from the schedule rates made by this defendant in respect to the carriage of coal by any parties over the Denver, Marshall and Boulder Valley road is that made by and between this defendant to the said Marshall Consolidated Coal Mining Company, and that it was made for the reasons above given, and for no other reasons whatever. And this defendant further says that it is informed, and believes that it costs to the said Marshall Consolidated Coal Mining Company, and would have cost to this defendant had it continued to mine the Louisville Mine through the Union Coal Company, the sum of at least $1.60 per ton to mine coal from the said Marshall Consolidated Company Mine, and to get the same in cars upon the track, as provided for in this contract; and that it would have cost this defendant the same to mine from the Louisville and Erie mines had it continued to mine for its own use in said mines. And this defendant further says that on account of the settlement of the claims made against it by the said Marshall Consolidated Mining Company, which said claims were settled and provided for in the said contract above set forth, and on account of the coal necessarily used by it, the defendant, and furnished to it by the said Marshall Consolidated Coal Mining Company under the terms of the contract above set forth, the said Marshall Consolidated Mining Com-

pany have paid to this defendant, and this defendant has received of the Marshall Consolidated Coal Mining Company, a higher rate as a matter of fact than one dollar per ton, although it was not intended that the rate should exceed the schedule price; that at the time of the making of said contract it was believed that the price at which the coal was to be furnished to this defendant for its use on locomotives, and on account of the settlement of the claims as aforesaid, and on account of the benefits accruing to this defendant by reason of the Marshall Consolidated Mining Company taking and operating the said Louisville and Erie Mines, this defendant would receive from the said Marshall Consolidated Coal Mining Company, for the said period of five years, during which said contract was to operate, the same price as that fixed in the schedule price."

From all this it is apparent that the answer sets up certain considerations received by defendant from the Marshall Company, upon which less rates are given to the latter than to other shippers. And these considerations are not in the way of a charge for carrying coal upon which any estimate can be made to ascertain the amount of such charge. Whether we refer to the claim for damages against the Denver & Western Company, or to the matter of furnishing coal for defendant's use, or to any other consideration for the contract, it is plain that there is no basis of calculation other than the rate fixed in the contract itself. It is not possible to say how much, if anything, should be added to the contract price for carrying coal on account of the claim for damages against the Denver & Western Company, or on account of canceling the contract with the Union Coal Company, or on account of furnishing coal at cost for defendant's use, or on account of furnishing coal for sale at a reduced price, or on account of any other matter mentioned in the answer. The whole answer amounts only to this: that the Marshall Company is allowed less rates than other shippers are required to pay upon considerations which are satisfactory to defendant. And it is obvious that this is no answer to a complaint of unlawful discrimination.

The constitution of the state provides that "no undue or unreasonable discrimination shall be made in charges * * * for transportation of freight * * * within the state;" and the law enacted to enforce that provision is that "no railroad company shall * * * charge, demand, or receive from any person, company, or corporation for the transportation of persons or property, or for any other service, a greater sum than it shall, while operating under the classification and schedule then in force, charge, demand, or receive from any other person, company, or corporation for a like service from the same place, or upon like conditions and under similar circumstances; and all concessions or rates, drawbacks, and contracts for special rates shall be open to and allowed all persons, companies, and corporations alike, at the same rate per ton per mile, upon like conditions, and under similar circumstances." This law cannot be controlled or defeated by any agreement between the railroad company and the favored shipper. It is true that when the consideration paid for reduced rates by the favored shipper is obviously equal to the discount allowed him, the law does not apply. Whenever that fact appears, since it matters not in what form the shipper pays the usual

rates, the alleged discrimination disappears, and the contract is no longer obnoxious to the law. If, to illustrate, the damages due from the Denver & Western Company had been liquidated, and the agreement was to carry a certain quantity of coal for the amount so fixed, the question would be different. As it stands, the agreement is to give to the Marshall Company a reduced rate for certain considerations which defendant says are sufficient to make up the discount from the schedule rate; and as to that matter, the fact cannot be ascertained from the contract or otherwise. So understood it is clear that the contract affords no protection to defendant for the discrimination in rates to which plaintiffs and other shippers of coal over defendant's road are subjected. In this case no difficulty arises as to the meaning of the words "unjust or undue discrimination" in the law. Plaintiffs and the Marshall Company are dealers in coal in the same market, depending largely on the same rates of transportation for the profits of their business. The direct effect of a reduced rate to the Marshall Company is to reduce the profits on plaintiff's coal to the extent of such reduction. The demurrer to the second defense will be sustained.

A general denial of all material allegations in the complaint was not allowed under the Code of 1877; but it is authorized by the New Code of 1887, § 56, and the demurrer to the first defense will be overruled.